# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

FILED

December 30, 2015

RORY L. PERRY II, CLERK

SUPREME COURT OF APPEALS

OF WEST VIRGINIA

**ELIZABETH M. MAYS,**
**Claimant Below, Petitioner**

**vs.)    No. 14-0705** (BOR Appeal No. 2049393)
                    (Claim No. 2001022229)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER**
**Commissioner Below, Respondent**

**and**

**PRO NURSING & HEALTH SERVICE, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Elizabeth M. Mays, pro se, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia Office of the Insurance Commissioner, by Jon H. Snyder, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated June 25, 2014, in which the Board affirmed a March 31, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's December 24, 2013, decision to deny authorization for the medication Lortab. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Ms. Mays, a certified nursing assistant for Pro Nursing & Health Service, Inc., injured her shoulder and arm on September 27, 2000, while attempting to move a patient at work. The next day the pain occurred again while she was moving a patient. On October 5, 2000, Ms. Mays reported to John M. Iaquinto, M.D., for evaluation. Ms. Mays relayed to Dr. Iaquinto that she had pain mainly in the anterior portion of the mid-left arm. X-rays obtained from Tri-State Medical Center of the left shoulder and humerus showed normal bony architecture and alignment. On examination he noted the claimant had diminished range of motion in abduction and internal rotation of the left shoulder, and a positive impingement sign. The impression was left shoulder strain and possible impingement syndrome. Dr. Iaquinto recommended initiation of supervised physical therapy, over-the-counter analgesics and to continue to remain off work. He also suggested a follow-up in one month. On November 2, 2000, Ms. Mays returned to Dr. Iaquinto for further evaluation. Dr. Iaquinto noted shoulder function and pain in the shoulder improved, as had the pain in her neck. He noted Ms. Mays is still bothered by radicular type pain down the left upper extremity mainly in the arm, but also extending into the forearm all the way to the wrist. His examination revealed nearly full abduction and internal rotation of the left shoulder compared to the right. He noted that the impingement sign was still mildly positive, but improved. Cervical range of motion was mildly restricted. His impression was improving left shoulder impingement and possible cervical radiculopathy. Dr. Iaquinto discussed treatment options with Ms. Mays. Ms. Mays indicated that she wanted to observe it and proceed from there. On May 1, 2001, Ms. Mays underwent an MRI. It revealed mild desiccation of all the discs from C2-3 through C6-7 consistent with mild degenerative change, as well as disc space narrowing at the C5-6 level consistent with more pronounced degenerative changes at this level. The impression was a central to left paramedian disc herniation at the C5-6 level producing high grade acquired spinal canal stenosis eccentrically on the left of midline, which did not appear to impinge upon the spinal cord. Based upon the MRI, Ms. Mays reported to Panos lgnatiadis, M.D., on May 8, 2001, to discuss surgical intervention. Dr. lgnatiadis stated the claimant has a disc herniation at C5-6 corresponding with her symptoms, which he considered related to the accident of September 27, 2000. He explained the risks of an anterior discectomy to her. He referred her to Dr. John Schmidt, MD, for a second opinion, and requested that an appointment be authorized. On October 11, 2001, Ms. Mays was given notice of secondary conditions added to her claim, which was displacement of cervical disc and sprain of the shoulder. On July 6, 2004, Ms. Mays returned to Dr. Ignatiadis for her left C5-6 disc herniation with acquired stenosis.

Ms. Mays underwent another MRI on March 22, 2012, which revealed severe left-sided canal and foraminal narrowing at the C5-6 level secondary to an asymmetric disc osteophyte complex. It was noted this finding was reported on the May of 2001 study. However, the reviewing doctor noted that he had no direct imaging comparisons. On May 7, 2012, Ms. Mays reported to Pamela Rice-Jacobs, CFNP, and Ozzie Ozturk, M.D. They noted the diagnoses of cervical spondylosis and cervical discopathy. Her main complaint was pain in the neck, back, left shoulder, and left arm. She returned for chronic opioid therapy follow-up. Her pain was on average 5-7/10 and at its worst the prior week. They noted Ms. Mays's pain has not changed since she was initially seen in 2002. On January 28, 2013, Ms. Mays reported to Jerry Scott, M.D., for an independent medical evaluation. Ms. Mays reported there was no one event leading to her injury. She relayed that she developed symptoms of neck, upper back, and left arm pain

over a period of time. Dr. Scott noted at the time of examination that Ms. Mays was a fifty-six year old female who was five-feet-five-inches tall and weighed 322 pounds. He also noted that she suffered from diabetes. After examination, Dr. Scott concluded that Ms. Mays has a history of a cervical sprain superimposed upon pre-existing degenerative disease of the cervical spine which was diffuse in nature and noted as early as the May 1, 2001, MRI. He also noted that she has a history of thoracic sprain and a history of left shoulder sprain. He noted there was little objective evidence pertaining to the left shoulder and thoracic region other than some negative x-rays of the left shoulder. In response to specific questions posed by the claims administrator, Dr. Scott stated it was his opinion that Ms. Mays's current subjective complaints do not support a causal relationship to the September 27, 2000, incident. Dr. Scott opined that Ms. Mays's morbid obesity adds stress to her frame, limits her potential for recovery, and increases the progression of her pre-existing degenerative disease. She also has a history of diabetes which may also complicate some of her treatment and complaints. He stated the only electrodiagnostic study he is aware of showed nothing more than some possible slight sensory based carpal tunnel with no evidence of radiculopathy or plexopathy. Dr. Scott further opined Ms. Mays's treatment has been directed at her pre-existing degenerative disease and her subjective complaints. Other than treatment in the immediate weeks after this incident, Dr. Scott found no indication Ms. Mays's treatment has been necessary and appropriate as reasonably related to the September 27, 2000, incident. He also opined that any current treatment is directed at Ms. Mays's underlying degenerative disease which is not compensable. Dr. Scott noted Ms. Mays generally alternates taking Ibuprofen and Lortab daily. One thing that concerned Dr. Scott was that Ms. Mays was being prescribed opioid medications at the rate indicated on her bottle and then not taking it as prescribed, leaving doses unaccounted for. He opined that the continued use of Lortab is not appropriate or medically necessary for the treatment of the September 27, 2000, injury. He believed she was using Lortab to treat her pre-existing conditions.

In response to Dr. Scott's independent medical evaluation, Dr. Ozturk wrote a letter dated February 28, 2013. In his letter Dr. Ozturk did agree that it is difficult to determine this far removed from the injury whether Ms. Mays's accident caused her current symptoms. However, he believed that the incident was causing her problems today. He stated that he had seen her two years after the injury and her complaints have been the same since. She had very little pain relief with injections and instead was treating her pain with minimal amounts of medications. He stated her morbid obesity does impact her movement; however, the problem is based in her neck. Dr. Ozturk further opined that he believes that treatment has been appropriate and necessary especially considering she could not take non-steroidal drugs due to having gastrointestinal bleeding. Based upon the report of Dr. Scott, the claims administrator denied the request for the medication Lortab on December 24, 2013. Ms. Mays protested this decision.

The Office of Judges determined the medication Lortab was not medically related or reasonably required for the treatment of Ms. Mays's fourteen-year-old injury. The Office of Judges determined that the continued need for narcotic medication was because of her long standing degenerative changes and not the compensable injury. This opinion was shared by Dr. Scott. Dr. Scott noted that degenerative changes could be seen as early as May 1, 2001, on her MRI. Dr. Scott opined that the treatment in the two weeks immediately following the injury was medically related and reasonably required. However, all of the other treatments have been due to

her degenerative disc disease and not the compensable injury. To support his position Dr. Scott further noted that she was five-feet-five-inches tall but weighed 322 pounds and has diabetes. The Office of Judges felt that Dr. Scott's opinion was more persuasive than the opinion of Dr. Ozturk. Dr. Ozturk admitted that an outside physician would have a difficult time determining that her pain was related to the September 27, 2000, incident but asserted that the connection was still there. He supported his position by reiterating that he examined Ms. Mays two years after her injury and he traced it to the September 27, 2000, injury. He also noted that the complaints of pain have not changed considerably from the first time he examined her. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

The consistent decisions of the Office of Judges and Board of Review should be affirmed. The Office of Judges, as the trier of fact, is in the best position to determine the weight and credibility of the evidence presented. The Office of Judges determined that the evidence of record supported Dr. Scott's opinion as opposed to Dr. Ozturk's. Even Dr. Ozturk admits himself that the connection between the September 27, 2000, injury and the current symptoms is difficult to discern. While Dr. Ozturk was in a better position when compared to Dr. Scott to determine whether her symptoms were work-related he still was not in a great position. Dr. Ozturk did not examine Ms. Mays until two years after the injury. The MRI showed diffuse degenerative changes in several places in May of 2001. The MRI scan combined with her other medical issues such as obesity, diabetes, and degenerative disc disease supports the conclusion that her pain was not caused by the September 27, 2000, injury. Furthermore, pursuant to West Virginia Code of State Rules § 85-20-53.14 (2006), Lortab should not be prescribed on an outpatient basis for longer than six weeks after initial injury or following a subsequent operative procedure. Ms. Mays is at least a decade past her date of injury and subsequent operative procedure. Because the evidence suggests that her pain is due to her chronic degenerative disc disease and not the September 27, 2000, injury, the Office of Judges did not err when they relied on the report of Dr. Scott.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:   December 30, 2015**

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II